IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
September 23, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Nik Sams
DEPUTY CLERK

**HUDSON SPECIALTY INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**MARK HORMUZ DEAN, D.O., *et al.*,**

**Defendants.**

**Civil Action No. 3:24cv22**

**By: Hon. Robert S. Ballou**
**United States District Judge**

## MEMORANDUM OPINION

In this federal declaratory judgment action, plaintiff Hudson Specialty Insurance Company asks the court to find that it has no duty to defend Mark Dean, D.O., and his two medical practices in a state court civil action arising out of Dean's alleged sexual assault of a patient. The parties filed cross-motions for summary judgment. Dkts. 84, 87, 89. Because Dean made material misrepresentations in policy renewal documents that void the insurance policies, I GRANT Hudson's motion for summary judgment and DENY Defendants' motions for summary judgment.

### I. FACTS

#### a. Insurance Policies

Hudson has two specific insurance policies at issue, (1) Policy No. HCP 4013029, issued to Osteopathic Physicians of Charlottesville, Ltd, for the period from September 28, 2017 to September 28, 2018, providing certain claims-made professional liability insurance; and (2) Policy No. HCF 4013422, issued to Osteopathic Surgical Centers, LLC, for the period from February 1, 2018 to February 1, 2019, providing certain claims-made liability insurance and

commercial general liability insurance. Dkt. 53, Ex. 9, 10. The policies were the last in a series of annual policies issued by Hudson to Osteopathic Physicians of Charlottesville Ltd and Osteopathic Surgical Centers LLC. Dean is an "insured" under both policies.

**b. Undisputed Facts**

The following facts are either undisputed or are matters of public record. Dean was a doctor of osteopathic medicine licensed to practice medicine in the Commonwealth of Virginia. Dean owned and operated two medical practices, Osteopathic Physicians of Charlottesville Ltd ("OPC") and Osteopathic Surgical Centers LLC ("OSC"). In 2005, Hudson issued professional liability policies to OPC and OSC. Hudson renewed the policies in the years 2011 through 2014 based, at least in part, on Physician Renewal Checklist forms completed by Dean to the best of his ability and knowledge, including a declaration that his statements on the forms were true and correct. OSC and OPC qualified for a Hudson "good risk" underwriting program for renewal years 2015 through 2017, which did not require Dean to complete further Physician Renewal Checklists.

From January 2017 through January 2018, Ms. Aaron Shifflett became a patient of both practices and received pain management services and related health care. In August 2019, Shifflett filed a civil suit against Dean, OSC and OPC in the Circuit Court for Albermarle County, alleging that Dean sexually assaulted her during treatment. Shifflett's civil suit asserts claims for sexual assault, aggravated sexual battery, and medical malpractice against Dean; and claims for medical malpractice, vicarious liability, negligent retention and negligence against the medical practices. Dkt. 1-4.

Dean first notified Hudson of the Shifflett civil claim in March 2018. Hudson canceled both policies, effective March 26, 2018 (OPC policy) and July 2, 2018 (OSC policy). Dkt. 1-6.

Hudson formally reserved its rights to deny liability coverage for Shifflett's claims in a letter to Dean, OPC and OSC, and provided counsel and a defense to the civil suit under that reservation. Dkt. 1-6.

Dean was charged criminally in the Albemarle County Circuit Court for sexually assaulting Shifflett and others, and on September 22, 2023, pled guilty to four counts of object sexual penetration in violation of Va. Code § 18.2-67.2, pursuant to a plea agreement permitted by *North Carolina v. Alford*, 400 U.S. 25 (1970), otherwise known as an "*Alford* plea." Dkt. 1-8. Dean received a sentence of twenty years imprisonment with all but one year and three months suspended, for each of the four counts, to be served consecutively.[1] *Id.* In this declaratory judgment action, Dean denies that he engaged in any misconduct or criminal conduct related to Shifflett or any other patient.

Following Dean's criminal conviction, Hudson amended its reservation of rights to deny any duty to defend, and filed this action for declaratory relief, seeking a determination that it has no duty to defend Dean, OSC or OPC in the Shifflett civil suit. Hudson asserts multiple grounds on which to deny a duty to defend, including Dean's misrepresentation, prior knowledge, failure to notify, judicial estoppel, alter ego, and multiple exclusions under the policies' provisions. Hudson also filed a motion for default judgment against OPC and OSC.

Defendant Shifflett moved for partial summary judgment, asking the court to find that Hudson has a duty to defend OPC and OSC on the negligence claims in the civil suit. Dean moved for partial summary judgment, asking the court to find that Hudson has a duty to defend him and the medical practices as to all claims in the civil suit.[2]

---

[1] Dean is currently incarcerated and has been appointed a guardian *ad litem* in this matter.
[2] After these motions were fully briefed, Hudson requested either oral argument or the opportunity to submit an additional surreply to address the issues. Dkt. 108. Defendants Dean

## II. MOTION FOR DEFAULT JUDGMENT

Hudson filed a motion for default judgment as to defendants OPC and OSC, which have not made an appearance or filed a responsive pleading in this case. Dkt. 86. Under Rule 55 of the Federal Rules of Civil Procedure, a party "against whom a judgment for affirmative relief is sought" defaults when it "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After an entry of default by the clerk, a default judgment may be entered. Fed. R. Civ. P. 55(b).

Here, the Clerk entered default as to OPC and OSC on November 24, 2025. Dkt. 94. A court has discretion whether to grant a motion for default judgment. *Dow v. Jones,* 232 F. Supp. 2d 491, 494 (D. Md. 2002). Courts generally avoid entering default judgments, instead preferring to resolve claims on their merits. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.") (citing *Tazco, Inc. v. Dir., Off. of Workers Comp. Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir. 1990)).

Here, non-defaulting defendants Dean and Shifflett have adequately defended this matter, the appearance of OPC and OSC is not necessary to evaluate the insurance policy provisions at issue, and I find no need to abandon the preference for resolving this case on the merits. Accordingly, Hudson's motion for default judgment is **DENIED**, as I will resolve this matter on the merits.

---

and Shifflett both defer to the discretion of the court as to whether oral argument would be necessary or helpful. Dkts. 109 & 110. I find that the issues have been fully and substantially briefed and oral argument is unnecessary to aid in the decisional process.

## III. MOTIONS FOR SUMMARY JUDGMENT

### a. Legal Standard

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the court views the facts in the light most favorable to the non-moving party. *Id.* at 255. When cross-motions for summary judgment are before a court, a court must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007).

### b. Discussion

#### i. Insurance Contract Interpretation Under Virginia Law

Virginia law governs this case, as neither party disputes that the policies were delivered in Virginia, and the law of the place where an insurance contract is "delivered controls issues as to its coverage." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). Courts construing insurance contracts in Virginia must "give the language its plain and ordinary meaning and enforce the policy as written," if that language "is clear and unambiguous." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Block Roofing Corp.*, 754 F. Supp. 2d 819, 823 (E.D. Va. 2010) (citing cases). Policy provisions are not ambiguous simply because the parties disagree about their meanings, but only

if the language is "capable of more than one reasonable meaning," in context. *Id.* For unambiguous provisions, "[w]ords that the parties used are normally given their usual, ordinary, and popular meaning," such that "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it," with the "presumption that the parties have not used words needlessly." *City of Chesapeake v. States Self–Insurers Risk Retention Grp., Inc.*, 628 S.E.2d 539, 541 (Va. 2006) (quoting *D.C. McClain, Inc. v. Arlington Cnty.*, 452 S.E.2d 659, 662 (Va. 1995)).

In Virginia, any ambiguities must be construed against the insurer. *Block*, 754 F. Supp. 2d at 823 (citing cases). Exclusionary language is also "construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies . . . it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *Am. Reliance Ins. Co. v. Mitchell,* 385 S.E.2d 583, 585 (Va. 1989) (citations omitted).

A burden-shifting framework governs duty to defend disputes. First, the insured must establish a *prima facie* case that coverage should be triggered. *Block,* 754 F. Supp. 2d at 823 (citing *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 706 (E.D. Va. 2010)). "[T]his burden is not especially onerous since the insurer must defend unless it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Id. (*quoting *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (internal quotations omitted). If the insured meets that initial burden, the insurer must then prove any policy exclusions should apply to bar coverage. *Id.*

**ii. Eight Corners Rule**

Before delving into the merits of the parties' arguments, I must address the parties' contentions regarding what evidence the court may consider. Virginia applies the "eight corners

rule" when determining whether an insurer has a duty to defend its insured. *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 528 (4th Cir. 2015) (citing *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012)). This rule requires a court to compare the four corners of the insurance policy against the four corners of the underlying complaint to determine whether the allegations in the underlying complaint come within the coverage provided by the policy. *Id.* It is a "a well-established principle, consistently applied in this Commonwealth, that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *AES Corp.*, 725 S.E.2d at 535–36. A duty to defend is broader than the duty to indemnify and arises "whenever the complaint [against the insured] alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Id.* (citing *Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 265–66 (Va. 1996)).

The application of the eight corners rule to this insurance dispute has been strongly contested and resulted in multiple court opinions relating to Hudson's request to conduct discovery. *See* Dkts. 38 & 62. Defendants objected to engaging in any discovery on the theory that Hudson's duty to defend is governed by the eight corners rule and thus the only operative documents are the insurance policies and civil complaint. Hudson sought discovery on multiple grounds, including its allegations that Dean made misrepresentations on policy documents. The court held that the eight corners rule barred discovery related to Hudson's denial of the duty to defend based on policy exclusions. The court allowed discovery, however, regarding Hudson's allegations that the insureds breached conditions precedent to the insurance policies. Dkt. 62.

Following that framework, Hudson's motion for summary judgment relies on evidence outside the "eight corners" of the insurance policies and civil complaint to argue that Dean

breached conditions precedent to the policies' coverage. Hudson asks the court to consider evidence of Dean's settlement of a sexual abuse claim in 2010 and his state court criminal conviction for object sexual penetration to support Hudson's argument that Dean made material misrepresentations on policy renewal checklist forms.

Shifflett argues that it is improper to consider any facts outside the eight corners for purposes of summary judgment in this coverage dispute. Shifflett is correct that Hudson cannot rely on facts outside the eight corners to demonstrate that a policy exclusion applies to eliminate the duty to defend, or that Hudson would ultimately have no duty to indemnify. "Allowing an insurer to point to facts outside the pleadings to demonstrate that it would ultimately have no duty to *indemnify* as proof that it has no duty to *defend* would render the two duties indistinguishable and thus effectively depreciate the duty to defend." *Cap. Env'tl Servs, Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 642 (E.D. Va. 2008).

That said, Hudson's allegations that Dean breached conditions precedent to the policies by misrepresenting material facts on policy renewal applications fall outside the bounds of the eight corners inquiry. Courts routinely consider facts outside the eight corners in a coverage dispute where the insurer asserts that the insured breached a condition precedent of coverage, such as the cooperation clause, *see Miller ex rel. Est. of Hott v. Augusta Mut. Ins. Co.*, 335 F. Supp. 2d 727, 731–32 (W.D. Va. 2004); duty of notice, *see HDI Glob. Specialty SE v. Hassan*, No. 3:19cv891, 2021 WL 4176239 (E.D. Va. September 14, 2021); or that an insured's misrepresentation voids the policy. *Miller v. Pac. Employers Ins. Co.*, 875 F.2d 315, 1989 WL 54022 (4th Cir. May 5, 1989). These cases evaluate whether the insurer's coverage obligation is triggered under the policy. Such cases are not limited to the circumscribed consideration of whether an underlying civil complaint states claims that fall within the policy language. Instead,

courts considering whether an insured breached a condition precedent of a policy such as misrepresentation, concealment, fraud, failure to notify or failure to cooperate must rely on evidence outside the policy language and any underlying civil suit.

This case is similar to *Miller v. Pac. Employers Ins. Co.*, where the Fourth Circuit held that an insurer owed no duty to defend because its decision to issue the policy was based on material misrepresentations in the application for insurance. 1989 WL 54022, at *2. The court dismissed the insureds' argument that the insurance application was not admissible because it was not attached to or incorporated by the insurance policy, stating: "[a]lthough the Application may not be integrated for purposes of construing the meaning of the terms of the policy, this does not render the Application inadmissible for purposes of determining whether the policy is void or voidable under the circumstances of this case." *Id.* at *2. Similarly, here, the court is not bound by the eight corners rule when evaluating Hudson's arguments that Dean breached conditions precedent of the policies.

**iii. Misrepresentation**

Hudson asserts that Dean misrepresented material facts on Physician Renewal Checklists for the years 2011 through 2014, which violates the General Conditions provisions of the policies and voids coverage. Both policies contain a General Conditions provision stating:

> Misrepresentation, Breach of Warranty, Concealment and Fraud
>
> By accepting this policy, you[3] agree that:
>
> a. The statements in the Declarations are true and complete;
> b. Those statements are based on representations you made to us in the application (including any renewal application or information submitted to modify this policy); and

[3] The policy definitions state, "[t]he words 'you' and 'your' in this policy refer to the Named Insured shown in the Declarations." Dkts. 53-9, p. 32; 53-10, p. 22. The Named Insureds are OPC and OSC, respectively.

> c. We have relied on your representations in issuing and modifying this policy.
>
> If any insured under this policy, or any of your authorized representatives, conceals or misrepresents any material fact or circumstance concerning this insurance, this policy will be void.

Dkts. 53-9, p. 49; 53-10, p. 39. Dean is an insured under both policies.

Dean completed annual Physician Renewal Checklist forms as an insured on both policies in August 2011, 2012, 2013 and 2014. The forms include the following certification,

> I have answered the questions in the Application to the best of my ability and declare that, to the best of my knowledge, the statements set forth herein are true and correct. My signing of the Application shall be the basis of the contract should a policy be issued.

Dkt. 85-16, pp. 311–17. Each of the forms contained the question "[h]ave you ever had a complaint, claim or suit brought against you for alleged sexual misconduct?" to which Dean circled "No." Dkt. 85-16, pp. 311–17.

When completing discovery in this case, Hudson discovered in its files a demand letter from licensed Virginia attorney Colleen M. Quinn, Esq. to Dean dated May 14, 2018, in her representation of a female patient alleging medical malpractice, assault and battery, and sexual assault claims against Dean and his medical practices. Dkt. 85-18. The letter states, "in 2010, I personally represented a medical sales representative whom you sexually assaulted, and am therefore particularly aware of your history of aggressive, sexually deviant, and unlawful behavior." *Id.* On September 16, 2025, Ms. Quinn provided an affidavit to Hudson regarding the 2010 sexual assault incident, stating that in 2010 Dean agreed to pay one hundred thousand dollars to her client to settle all claims against Dean, OPC, OSC and SoapJack, LLC, related to or arising out of the events of February 16, 2010 at the offices of Osteopathic Pain Management in Charlottesville, Virginia. Dkt. 85-19. Ms. Quinn's affidavit includes an unsigned copy of the

final settlement agreement to resolve the 2010 claim, which is dated February 2011. *Id.* Ms. Quinn attests that the attached agreement is the final settlement agreement that was entered into by the parties. *Id.* Six months later, Dean completed the August 2011 Physician Renewal Checklist and answered "No" to the question "[h]ave you ever had a complaint, claim or suit brought against you for alleged sexual misconduct." Dean continued to answer that question "No" on the Checklist forms for 2012, 2013 and 2014.

"Under Virginia law, an insured is obligated to answer an application truthfully and fully to give the insurer the opportunity to make its own inquiry and determine whether to undertake the risk." *Carolina Cas. Ins. Co. v. Draper & Goldberg,* 138 Fed. App'x 542, 547, 2005 WL 1601422, at *5 (4th Cir. July 8, 2005) (citing *Mutual of Omaha Ins. Co. v. Echols,* 154 S.E.2d 169, 172 (Va. 1967)); *see also Inter–Ocean Ins. Co. v. Harkrader*, 67 S.E.2d 894, 897 (Va. 1951) ("A misstatement of material facts by the applicant takes away [the insurer's] opportunity to estimate the risk under its contract."). This requirement includes policy renewal documents. *See St. Paul Fire and Marine Ins. Co. v. Jacobson,* 826 F. Supp. 155, 159 (E.D. Va.1993) (hereinafter "*Jacobson I* "), *aff'd,* 48 F.3d 778 (4th Cir. 1995) (hereinafter "*Jacobson II* ").

An insurer may rescind a policy where it is clear that "an answer or statement ... in the application for insurance was both (i) material to the risk assumed; and (ii) untrue." *Jacobson I,* 826 F. Supp. at 159. And where, as Dean did here, the insured attests to the truth of the statements in an application for insurance to the best of his knowledge, the insurance company must show that the untrue answer was "knowingly false." *Id.* (citing *Old Republic Life Ins. Co. v. Bales,* 195 S.E.2d 854, 856 (1973)).

**1. Knowingly Fase**

To prevail at the summary judgment stage, Hudson "must demonstrate the absence of a genuine issue of material fact as to whether a material misrepresentation was made on the insurance policy application." *Medical Mut. Ins. Co. of N.C. v. Johnson*, No. 1:19cv1601, 2021 WL 9456932, at *2 (E.D. Va. Dec. 23, 2021) (internal quotations and citations omitted). "A misrepresentation has been made if the insured gave statements that were not true and correct to the best of the insured's knowledge and belief." *Id.* (internal quotations and citations omitted).

"The question of whether a misrepresentation was made, if disputed by the insured, is ordinarily one for the [trier of fact]." *Huberts v. Traveler's Indem. Co.*, No. 96-1560, 1997 WL 265232, at *3 (4th Cir. May 20, 1997). If the trier of fact "could reasonably resolve the issue in favor of the insured, summary judgment for the insurer is precluded." *Id.* If the record clearly shows that the insured gave statements that were not true and correct to the best of the insured's knowledge and belief, the court may resolve the question as a matter of law. *Great Am. Ins. Co. v. Gross*, No. 3:05cv159, 2008 WL 376263, at *5 (E.D. Va. Feb. 11, 2008) (citing *Parkerson v. Fed. Home Life Ins. Co.,* 797 F. Supp. 1308, 1315 (E.D. Va. 1992)).

In determining whether a statement is false, the "[t]erms of a question in an application for insurance must be interpreted as the ordinary person standing in the shoes of the insured would understand them." *Jacobson I,* 826 F. Supp. at 159. And the Fourth Circuit has recognized that common sense is a powerful guide in this inquiry. *Middleburg Volunteer Fire Dept. v. McNeil & Co.*, 60 F. Supp. 3d 640, 646 (E.D. Va. 2014) (citing *Jacobson II,* 48 F.3d at 781). Further, "it is clear under Virginia law that an insured has no affirmative duty to volunteer information; rather, an insured is only required to disclose information that is asked of him." *Jacobson II,* 48 F.3d at 780–81. Virginia courts assess an insured's prior knowledge under an objective standard, asking whether a reasonable person in possession of the facts known to the

insured, would have had a reasonable basis to know that a claim might be made against them. *Cont'l Cas. Co. v. Graham and Schewe*, 339 F. Supp. 2d 723, 727 (E.D. Va. 2004).

Here, the evidence reflects that Dean's representations on the Physician Renewal Checklist forms in August 2011, 2012, 2013 and 2014 were not true and correct to the best of Dean's knowledge and belief. Dean settled a claim alleging sexual assault for one hundred thousand dollars in 2010 and yet answered "No" to the question "[h]ave you ever had a complaint, claim or suit brought against you for alleged sexual misconduct" on the Checklist forms for 2011, 2012, 2013 and 2014.

Dean denies that his answer on the Physician Renewal Checklist was false and denies all allegations of sexual misconduct raised in this insurance dispute. Even so, the Checklist question does not ask about the truthfulness of allegations of the 2010 incident, or any of the other myriad sexual assault claims brought against Dean. The question did not ask if Dean committed sexual misconduct— it asked if *a claim* was brought against him for *alleged* sexual misconduct. The record establishes that Dean settled a claim in 2010 for the sum of one hundred thousand dollars with a person who was represented by a licensed Virginia attorney, and that claim related to an allegation of sexual assault. A reasonable person in possession of the facts known to Dean about the 2010 claim would have had a reasonable basis to know in 2011, 2012, 2013 and 2014 that he should have answered "yes" to the Checklist question asking if he ever had a claim brought against him for alleged sexual misconduct.[4] Thus, there is no genuine issue of material fact as to

[4] Hudson asserts that Dean also falsely answered "No" to the Physician Renewal Checklist question "[a]re you aware of any outstanding incidents, claims, or suits (even if you believe the claim or suit would be without merit) that you have not reported?" Yet at least as it relates to the 2010 settlement, a reasonable person in possession of the facts known to Dean could conclude the 2010 claim was no longer "outstanding" once it was settled. Thus, Dean's "no" answer to that question on the forms in 2011, 2012, 2013 and 2014 was not clearly a misrepresentation for summary judgment purposes.

whether Dean gave statements on the insurance policy renewal checklists for the years 2011, 2012, 2013 and 2014 that were not true and correct to the best of his knowledge and belief.

**2. Materiality**

The materiality of Dean's misrepresentation is a question of law that must be decided by the court. *Medical Mut. Ins. Co. of N.C.*, 2021 WL 9456932, at *3 (citing *United States Fid. & Guar. Co. v. Haywood*, 177 S.E.2d 530, 532 (Va. 1970)). "A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy," *Mutual of Omaha Ins. Co.*, 154 S.E.2d at 172, or if the insurer would have issued the policy at an increased premium, or on different terms. *Minn. Lawyers Mut. Ins. Co. v. Hancock,* 600 F. Supp. 2d 702, 709 (E.D. Va. 2009). Virginia law requires a showing of clear proof that a misrepresentation was material to the issuance of the policy. Va. Code. Ann. 38.2-309; *Minn. Lawyers Mut. Ins. Co.*, 600 F. Supp. 2d at 708-709.

The Fourth Circuit has found affidavits by insurance company representatives sufficient to demonstrate clear proof that a misrepresentation is material as a matter of law. *Carolina Cas. Ins. Co. v. Draper & Goldberg*, 2005 WL 1601422, at *7 (testimony of two insurance representatives that company would not have issued the professional liability policy had it known of prior lawsuits that insured failed to report on application was sufficient to determine

---

Hudson also points to Dean's February 2018 criminal indictment and plea agreement for multiple incidents of sexual assault to patients that occurred in 2011 through 2014, none of which he reported to Hudson prior to 2018. Hudson argues that these are "outstanding incidents, claims or suits (even if you believe the outstanding claim or suit would be without merit)" that Dean did not report on the Physician Renewal Checklist forms. Because Dean denies that he committed the sexual assaults for which he entered an *Alford* guilty plea, there could be an issue of material fact as to whether he was "aware of any outstanding incidents, claims, or suits" that he had not reported to Hudson prior to 2018.

that omission was material); *Med. Mut. Ins. Co. of N.C. v. Johnson*, 2021 WL 9456932, at *3 (affidavit by senior underwriter and director of underwriting services sufficient to establish materiality of misrepresentation); *Middleburg Volunteer Fire Dept. Inc.*, 60 F. Supp. 3d at 646 (declaration from underwriter supervisor sufficient to establish materiality of misrepresentation); *Minn. Lawyers Mut. Ins. Co*., 600 F. Supp. 2d at 709 (affidavits submitted by insurance company sufficient to establish that misrepresentations were material to decision to undertake the risk and issue policy); *Cont'l Casualty Co.*, 339 F. Supp. 2d at 727 (affidavit of director of underwriting sufficient to establish materiality of misrepresentation).

Here, Hudson provided the Declaration of David Leventhal, the Director for Healthcare at Hudson Insurance Group since April 29, 2016. Dkt. 85-16. Leventhal was the underwriting supervisor and custodian of records for professional liability accounts, including those for professional liability insurance and related commercial general liability insurance for health care providers. Leventhal was the underwriting supervisor for the Hudson policies issued to OPC and OSC between 2005 and 2018. Leventhal states that Hudson has maintained a strict policy of enforcing its exclusions and definitions that bar coverage for claims of sexual abuse or molestation by healthcare providers, which has been documented by corporate bulletins and through training and supervision protocols. Policyholders like Dean can only qualify for the standard market for healthcare provider liability insurance if their professional history does not include any incidents, claims or suits involving sexual abuse or molestation. Dean could not remain in the standard market for such insurance if he reported any incidents, claims or suits involving sexual abuse or molestation.

Leventhal represents that Hudson's underwriting policies and management standards – as well as respect for strong public policy – would have eliminated any likelihood of renewal if

sexual misconduct had been timely disclosed. Dean's failure to report sexual misconduct occurrences on the Physician Renewal Checklists for the years 2011 through 2014 caused his practices to qualify for a "good risk" underwriting program for the years 2015, 2016 and 2017, under which he was not required to sign further Physician Renewal Checklists. Leventhal states that after receiving first notice of the Shifflett claim in March 2018, Hudson canceled both the OPC policy and the OSC policy. Levinthal states that "Hudson would have been entitled to non-renew healthcare professional liability and commercial general liability insurance for the Named Insureds because of the 2010 Quinn-client matter and, had it been my decision under Hudson's clear guidelines at the time, I would have ordered non-renewal." Dkt. 85-16, p. 11.

Shifflett offers contrary evidence that Hudson approved an Employed Ancillary Provider Application from a nurse practitioner joining the OPC practice in June 2012 even though she left blank a question asking whether she had ever had a complaint or claim for sexual misconduct. Dkt. 99- 1, p. 7. Shifflett argues this demonstrates that Hudson did not review or rely on answers to that type of question when issuing insurance policies. Hudson notes that the same nurse submitted a Physician Renewal Checklist form one year later in August 2012 and fully answered the questionnaire, including the question relating to sexual misconduct.

One blank answer to a question about sexual assault on a different form by a different employee does not outweigh the sworn testimony of Hudson's underwriting supervisor that if Dean had truthfully represented that a sexual assault claim was brought against him in 2010 it would have impacted Hudson's decision to renew the insurance policies. *See Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 204 (4th Cir. 2024) (insurer's renewal of policy after complaints surfaced does not foreclose a finding that insured's misrepresentation about prior complaints was material because it may have caused insurer to issue policy at increased premium).

Levinthal's representation that knowledge of the 2010 claim of sexual misconduct against Dean would reasonably influence Hudson's decision regarding renewal of the professional liability insurance policies for two medical practices owned by Dean sufficiently demonstrates clear proof that Dean's misrepresentation was material. *See, e.g.*, *Middleburg Volunteer Fire Dept. Inc.*, 60 F. Supp. 3d at 646 ("Both common sense and [the Underwriting Supervisor's] declaration confirm that had defendants known of [the insured's] embezzling activities, they would have rejected the request for increased commercial crime limit coverage"); *TIG Ins. Co. v. Robertson*, No. 1:01cv143, 2003 WL 253167, at *3 (W.D. Va. Jan. 31, 2003) ("it would be unimaginable that the facts of King's [theft of client funds] would not be material to the risk of insuring against future malpractice claims.")

Thus, the record on summary judgment establishes that Dean made a knowingly false material statement on Hudson's Physician Renewal Checklist forms for years 2011 through 2014. Dean was an insured under the policies, he misrepresented a material fact, and under the policy provisions, the policies are void. *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th at 204 ("There is no genuine dispute of material fact that [insured] made a material misstatement in her policy applications, meaning that [insurer] is permitted to rescind its professional liability policy…"). "Virginia has long followed the rule that if the insured fails to fulfill a condition of an insurance policy, the insurer's coverage obligation is not triggered." *Bryan Bros. Inc. v. Cont'l Cas. Co.*, 660 F.3d 827, 830 (4th Cir. 2011) (citations omitted).

Shifflett argues that Dean's misrepresentations should only void coverage as to him as an individual insured, and not void coverage for the named insured companies. This argument is contrary to the plain language of the policies, which state that if "any insured" misrepresents "any material fact," "this policy will be void." Dkts. 53-9, p. 49; 53-10, p. 39. The policies do

afford coverage under some circumstances for an innocent insured. For example, while the policies exclude coverage for claims that arise out of or result from "harassment, sexual or otherwise; unfair discrimination; or wrongful discharge…" the policies expressly remove from the exclusion "any insured who did not take a direct part in harassment or unfair discrimination." Dkts. 53-9, p. 38; 53-10, p. 28. The General Conditions provision of the policies voiding coverage for misrepresentation of a material fact includes no such innocent insured provision. Rather, it clearly states, "if ***any insured*** under this policy…conceals or misrepresents ***any material fact*** or circumstances concerning this insurance, this policy ***will be void***." Dkts. 53-9, p. 49; 53-10, p. 39 (emphasis added). This unambiguous language voids the entire policy, not simply coverage for the misrepresenting insured.[5] *See Minnesota Lawyers Mut. Ins. Co.*, 600 F. Supp. 2d at 709 (citing *TIG Ins. Co*, 2003 WL 253167, at *3–4) (material misrepresentation on application by one insured rescinds coverage as to all insureds).

## IV. CONCLUSION

Dean made material misrepresentations on policy renewal documents during the years 2011 through 2014, which void coverage under the Hudson policies issued to OPC and OSC. Because the policies are void, Hudson is not obligated to provide a defense or coverage to Dean, OPC or OSC. Hudson's motion for summary judgment is GRANTED and Defendants' motions for summary judgment are DENIED. A separate final judgment will be entered this day.

Entered: September 23, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

[5] Because Hudson is entitled to rescind the insurance policies, it is unnecessary to consider the additional grounds asserted by Hudson to deny a defense to the insureds.